**SO ORDERED.**

**SIGNED this 13 day of February, 2008.**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**



_____
**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| IN RE: | ) Bankr. Case Nos. 08-10249, et. al |
| | ) |
| PROPEX, INC., et al., | ) Chapter 11 |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS; AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

Upon the motion (the "**Motion**") of Propex, Inc. (the "**Borrower**"), and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"), in the above-captioned cases (the "**Cases**") seeking, pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C

§§101, *et seq.* (the "**Bankruptcy Code**") and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), this Court's authorization:

(a)    for the Borrower to obtain postpetition financing pursuant to a $60 million Superpriority First Lien DIP Revolving Credit Facility (the "**DIP Facility**" substantially in the form attached to the Motion as <u>Exhibit 1</u> and together with any related documents or agreements, the "**DIP Documents**"), and for substantially all existing and future subsidiaries of the Borrower, as set forth in the DIP Documents (the "**Guarantors**") to guaranty the Borrower's obligations in connection with the DIP Facility up to the aggregate principal amount of $60 million (the actual available principal amount at any time being subject to the conditions set forth in the DIP Documents) from BNP Paribas Securities Corp, acting as lead arranger (the "**Lead Arranger**") and BNP Paribas, acting as sole administrative agent (the "**Administrative Agent**"), for itself and a syndicate of financial institutions (together with the Administrative Agent, the "**DIP Lenders**"):

(i)    having priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code (except from proceeds of claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), 723(a) or 724(a) of the Bankruptcy Code (collectively, the "**Avoidance Actions**");

(ii)    being secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtors including, but not limited to, Cash Collateral (defined below), accounts receivable, other rights to payment whether arising before or after the Petition Date,[1] property, plant, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, but excluding the Avoidance Actions;

(iii)    being secured, pursuant to Section 364(d)(1) of the Bankruptcy Code, by perfected first priority senior priming liens on all property of the Debtors (other than Avoidance Actions) that are senior to (x) existing liens that secure the obligations of any kind of the Debtors under that certain Credit Agreement (the "**Prepetition Credit Facility**") dated as of January 31, 2006, as amended, among the Borrower, the lenders party thereto (the "**Prepetition Lenders**") and BNP Paribas, as administrative agent (the "**Prepetition Agent**") and the guarantees and other documents entered into by the Borrower and/or the other Debtors in connection therewith, as any of such documents may have been amended, modified, supplemented or refinanced, (collectively, the "**Prepetition Credit Documents**"), (y) any liens to which the liens granted under the Prepetition Credit Documents are senior and (z) any liens granted after the commencement of the Cases to provide adequate protection in respect of the Prepetition Credit Facility (collectively, the "**Primed Liens**"); and

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

(iv)    being secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected security interests in and liens upon prepetition and postpetition property of the Debtors that is subject to valid and perfected liens in existence at the time of the commencement of the Cases or to valid liens in existence at the time of such commencement as permitted by Section 546(b) of the Bankruptcy Code, junior to such liens (other that the Primed Liens).

(b)    for the Debtors to use the Cash Collateral (as such term is defined in the Bankruptcy Code) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other "Collateral" (as defined in the Prepetition Credit Documents) in which the Prepetition Lenders have a lien or security interest (together with the Cash Collateral, the "**Prepetition Collateral**") and provide adequate protection with respect to any diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral resulting from the implementation of the DIP Facility and the priming of the Prepetition Agents' liens on the Prepetition Collateral to secure the DIP Facility set forth herein, the use of the Cash Collateral and the use, sale or lease by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on the Motion for this Court to consider entry of an interim order annexed to the Motion (the "**Interim Order**") (i) authorizing the Borrower, on an interim basis, to forthwith borrow from the DIP Facility up to the aggregate amount of $20 million from the DIP Lenders under the DIP Facility, (ii) authorizing the use by the Debtors of Cash Collateral, and (iii) granting the adequate protection hereinafter described, and

(d)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order authorizing the DIP Facility on a final basis, as set forth in the Motion and the DIP Facility; and

(e)    the granting of certain related relief.

An Interim Hearing on the Motion having been held by this Court on January 22, 2008, and the Court having entered the Interim Order [Docket No. 56] (a) authorizing the Borrower to borrow up to an aggregate principal or face amount of $20 million pursuant to the DIP Facility as provided for in the Interim Order and (b) scheduling the Final Hearing to consider entry of an order authorizing the balance of the amount set forth in the DIP Facility, all as set forth in the Motion, Interim Order and the loan documentation filed with the Court.

A Final Hearing to consider entry of the Final Order authorizing the balance of the DIP Facility on a final basis having been held by this Court on February 13, 2008 and upon the record made by the Debtors at the Interim and Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*. This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. Notice of the Final Hearing was served by the Debtors on their thirty largest unsecured creditors, the Prepetition Agent, the United States Trustee for the Eastern District of Tennessee and certain other parties. Under the circumstances, such notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3. *Objections*. All objections to the entry of this Final Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4. *Debtor's Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 17 below), the Debtors admit, stipulate and agree that:

(a) as of the Petition Date, (i) the Debtors were truly and justly indebted and liable to (i) the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the outstanding aggregate principal amount of approximately $230 million in respect of loans made by the Prepetition Lenders pursuant to, and in accordance with the terms of, the Prepetition Credit Documents, plus, accrued and unpaid interest thereon and fees, expenses and other

4

obligations incurred in connection therewith as provided in the Prepetition Credit Documents (collectively, the "**Prepetition Secured Obligations**"), and

(b)  the Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)  no portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and

(d)  the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Agent, the Prepetition Lenders and their affiliates, agents, officers, directors, employees, attorneys and advisors with respect to the Prepetition Secured Obligations; the Debtors agree that the liens and security interests granted to the Prepetition Agent and the Prepetition Lenders pursuant to and in connection with the Prepetition Credit Documents (including, without limitation, all security agreements, pledge agreements, mortgages, leasehold mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Lenders) are (i) valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral (the "**Prepetition Liens**"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (x) after giving effect to this Final Order, the DIP Liens (as defined below), and (y) valid, perfected and unavoidable liens permitted under the Prepetition Credit Documents to the extent such permitted liens are senior to

or *pari passu* with the liens of the Prepetition Agent and the Prepetition Lenders on the Prepetition Collateral (the "**Permitted Prepetition Liens**").

(e)     The Prepetition Collateral constitutes substantially all of the Debtors' assets.

5.     *Findings Regarding the DIP Facility.*

(a)     Good cause has been shown for the entry of this Final Order.

(b)     The Debtors have an immediate need to obtain the DIP Facility and use the Prepetition Collateral, including the Cash Collateral, in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the use of cash collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or unsecured credit with the enhanced priority afforded by section 364(c)(1) of the Bankruptcy Code.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders, subject to the Carve Out (as defined below) as provided for herein, the DIP Liens

and the Superpriority Claims (defined below) under the terms and conditions set forth in the Interim Order, this Final Order and in the DIP Documents.

(d)     The terms of the DIP Documents and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of Cash Collateral have been negotiated in good faith between the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Agent, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all loans made to the Debtors pursuant to the DIP Facility (together with any other obligation arising under the Interim Order, this Final Order or the DIP Documents, collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lenders in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision of either such order is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Final Order and the DIP Facility are therefore in the best interest of the Debtors' estates.

6.     *Authorization of the DIP Documents.*

(a)     The DIP Documents are hereby approved as set forth in this Final Order and the Debtors are hereby authorized to borrow money pursuant to the DIP Documents and this Final Order, up to an aggregate principal or face amount, inclusive of amounts authorized by the Interim Order, of $60 million, which shall be used for all purposes permitted under the DIP Budget and the other DIP Documents, including, without limitation, to provide working capital for the Debtors and to pay interest, fees and expenses in accordance with this Final Order and the DIP Documents.

(b)     In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including, without limitation:

(i)     the execution, delivery and performance of the DIP Documents and any exhibits attached thereto, including, without limitation, the DIP Facility,

(ii)     the execution, delivery and performance of one or more amendments to the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Documents that do not shorten the maturity of the extensions of credit thereunder or increase the commitments, the rate of interest or the letter of credit fees payable thereunder); *provided*, *however*, that the statutory committee of unsecured

creditors appointed in this Case (the "**Creditors' Committee**") shall be given five (5) business days written notice and shall not have raised an objection prior to any such amendment becoming effective,

(iii)    the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Documents and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents,[2] and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute the valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with the terms of the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer

---

[2]    Such professionals shall submit invoices for payment of professional fees to the Debtors and the Creditors' Committee (together, the **"Professional Fee Submission Parties"**).  The Professional Fee Submission Parties shall have twenty (20) days from receipt of such invoices to review and provide such professionals with written notice of any objection to the fees requested.  At the expiration of the twenty (20) day period, the Debtors will promptly pay the undisputed portion of the invoiced professional fees.  In the event of an objection, such fees shall not be paid until the parties have reached a consensual resolution of the objection.  If consensual resolution of an objection cannot be achieved, the Professional Fee Submission Parties or the professional, as applicable, may file a motion with the Bankruptcy Court to settle any unresolved objections as to  the disputed professional fees.

Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.     *Superpriority Claims.*

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors (except from proceeds of the Avoidance Actions) with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out (as defined below) to the extent specifically provided for herein.

(b)     For purposes hereof, the "**Carve Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii) an amount not exceeding $1,000,000 in the aggregate, which amount may be used subject to the terms of this Final Order, including, without limitation, paragraph 19 hereof, solely to pay any fees or expenses incurred by the Debtors and any statutory committees appointed in the Cases (each, a "**Committee**") after the occurrence and

during the continuance of an Event of Default (as defined in the DIP Facility) and following delivery of written notice of the occurrence of such Event of Default to the Debtors and the Creditors' Committee by the DIP Agent (the "**Carve Out Notice**"), in respect of (A) the allowance of compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court to the Debtors' or any Committee's professionals and (B) the reimbursement of expenses allowed by the Bankruptcy Court incurred by Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) ((ii) (A) and (B) collectively, "**Professional Fees**"); and (iii) Professional Fees incurred prior to delivery of the Carve Out Notice; *provided*, *however*, (x) that the dollar limitation in clause 7(b)(ii) on fees and disbursements shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked (and shall be payable to the extent ultimately allowed by the Bankruptcy Court as if part of, but without reducing, the Carve Out) or by any fees, expenses, indemnities or other amounts paid to the DIP Agent, DIP Lenders, the Prepetition Agents, the Prepetition Lenders or their respective attorneys and agents under the DIP Documents, the Interim Order, this Final Order or otherwise, (y) that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above, and (z) that cash or other amounts on deposit in the Letter of Credit Account (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out.

8.      *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the DIP Lenders, pursuant to the Interim Order, this Final Order and the DIP Facility, the "**DIP Liens**"):

(a) <u>First Lien on Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including, without limitation, any unencumbered cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing. Liens on Unencumbered Property shall exclude (i) the Avoidance Actions and (ii) greater than 66% of the capital stock of foreign subsidiaries of the Borrower or any Guarantor that is specifically identified in the DIP Documents as not being pledged.

(b)    <u>Liens Priming Prepetition Secured Parties' Liens</u>.    Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that, in accordance with the Prepetition Credit Documents, is subject to the existing liens presently securing the Prepetition Secured Obligations.    Such security interests and liens shall be senior in all respects to (i) the interests in such property of the Prepetition Agent and the Prepetition Lenders arising from current and future liens of the Prepetition Agents and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (defined below)) and (ii) the interests in such property held by any party whose interests are junior to the interests of the Prepetition Agent and Prepetition Lenders.

(c)    <u>Liens Junior to Certain Other Liens</u>.    Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to (i) valid, perfected and unavoidable liens (other than the Primed Liens, which shall be governed by paragraph 8(b) above) in existence immediately prior to the

Petition Date or (ii) to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case which existing liens are senior to the Prepetition Liens, which security interests and liens in favor of the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(d)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens (defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(e)     Nothing in the Interim Order, the Final Order or the DIP Documents constitutes a pledge, conveyance, transfer, encumbrance or assignment – or otherwise changes the ownership – of the property of any person or entity (including property of Shaw Industries Group, Inc.) other than the Debtors (and Shaw Industries Group, Inc. does not need to bring an adversary proceeding or contested matter in these bankruptcy cases to further establish that nothing in the Interim Order, the Final Order or the DIP Documents constitutes a pledge, conveyance, transfer, encumbrance or assignment – or otherwise changes the ownership – of the property of Shaw Industries Group, Inc.).

9.    *Protection of DIP Lenders' Rights.*

(a)    So long as there are any borrowings or letters of credit or other amounts outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are outstanding), or the DIP Lenders have any Commitment (as defined in the DIP Facility) under the DIP Documents, the Prepetition Agent and Prepetition Lenders shall (i) take no action to foreclose upon or recover in connection with the liens granted pursuant to Prepetition Credit Facilities, the Interim Order or this Final Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this Court and the Prepetition Agent hereby reserves the right to seek such relief, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents; *provided* that the Prepetition Agent and any Prepetition Lender may appear and be heard as a party in interest in connection with any proceeding relating to the sale, transfer or other disposition of any Collateral and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless, solely as to this clause (iii), the DIP Agent files financing statements or other documents to perfect the liens granted pursuant to the Interim Order, this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided

15

in clause (ii) below and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of ten (10) days prior written notice, all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent and the DIP Lenders set forth in the Interim Order, this Final Order or the DIP Documents. In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The DIP Agent's or the DIP Lenders' failure to seek relief or otherwise exercise its rights and remedies under the DIP Facility, the Interim Order or this Final Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise.

(c)     Entry of this Final Order shall be without prejudice to the right of the Prepetition Agent and the Prepetition Lenders to seek relief in the Cases and to appear and be heard on matters before the Court.

10.     *Limitation on Charging Expenses Against Collateral*.

Except to the extent of the Carve Out, no expenses of administration of any of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the

Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders.

11. *Interest on DIP Obligations*. Interest on the DIP Obligations shall accrue at the rates and shall be paid at the times as provided in the DIP Documents.

12. *Use of Cash Collateral*. The Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Lenders within the meaning of Section 363(a) of the Bankruptcy Code. The Debtors are hereby authorized to use the Cash Collateral of the Prepetition Lenders pursuant to and limited by the provisions of the DIP Budget, *provided* that the Prepetition Lenders are granted adequate protection as hereinafter set forth. The Debtors' right to use Cash Collateral under this Final Order shall automatically terminate on the date that is the earlier of (i) ten (10) days after an Event of Default under the DIP Facility or (ii) the maturity of the DIP Facility.

13. *Adequate Protection*. The Prepetition Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Lenders' respective Prepetition Collateral, including, without limitation, any such

diminution resulting from the implementation of the DIP Facility and the priming of the Prepetition Agent's liens on the Prepetition Collateral, the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Prepetition Agent and the Prepetition Lenders are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)     <u>Adequate Protection Liens</u>.    To secure the Adequate Protection Obligations, the Prepetition Agent (for itself and for the benefit of the respective Prepetition Lenders) is hereby granted (effective and perfected upon the date of the Interim Order or  this Final Order, as applicable, and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements or other agreements) a valid, perfected replacement security interest in and lien (the "**Adequate Protection Liens**") upon all the Collateral (excluding the Avoidance Actions), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the security interests and liens granted to the DIP Agent for the benefit of the DIP Lenders in the Interim Order, this Final Order and pursuant to the DIP Documents and any liens on the Collateral to which such liens so granted to the DIP Agent are junior and (iii) the Carve Out.

(b)     <u>Section 507(b) Claim</u>.    The Adequate Protection Obligations shall constitute Superpriority Claims, subject and subordinate only to the payment of the Carve Out and the Superpriority Claims granted with respect to the DIP Obligations.  Notwithstanding the foregoing, (i) the Prepetition Agent and the Prepetition Lenders shall not receive or retain any payments, property or other amounts in respect of the Superpriority Claims under section 507(b)

of the Bankruptcy Code granted hereunder or under the Prepetition Credit Documents, but excluding any amounts payable or paid pursuant to the Interim Order or this Final Order, unless and until the DIP Obligations have indefeasibly been paid in cash, in full and (ii) such Superpriority Claims shall not attach to or be paid from the proceeds of Avoidance Actions.

(c)     Interest.   Consistent with the rights of holders of Prepetition Secured Obligations under section 506(b) of the Bankruptcy Code and in consideration of the entry of the Interim Order and this Final Order, the Debtors shall pay to the Prepetition Agent (on behalf of the Prepetition Lenders), monthly in arrears, an amount equal to postpetition interest on the Prepetition Secured Obligations at the respective non-default contractual rates set forth in the Prepetition Credit Documents (with the rights of all parties with respect to claims for any payment of additional default interest fully preserved); *provided* that the rights of all parties to contest whether the value of the Prepetition Collateral exceeds the Prepetition Secured Obligations (but not the interest rates), and to reallocate such payments to principal are hereby fully preserved.

(d)     Fees and Expenses.   Consistent with the rights of holders of Prepetition Secured Obligations under section 506(b) of the Bankruptcy Code and in consideration of the entry of the Interim Order and this Final Order, the Prepetition Agent shall receive from the Debtors current cash payments of all fees and expenses payable to the Prepetition Agent under the Prepetition Credit Documents and to any Prepetition Lender entitled to be paid under the Prepetition Credit Documents.   For purposes of the Interim Order and this Final Order, professional fee payments shall be made with respect to fees of one lead and one local counsel

and one financial advisor of the Prepetition Agent,[3] *provided* that the rights of all parties to contest whether the value of the Prepetition Collateral exceeds the Prepetition Secured Obligations (but not the amounts), and to reallocate such payments to principal are hereby fully preserved.

(e)     Reporting and Right to Access.  The Debtors shall provide the Prepetition Agent, the Prepetition Lenders and the Creditors' Committee with copies of all written reports, information and other materials delivered to the DIP Agent and the DIP Lenders pursuant to section 6.1 of the DIP Facility, and such other written reports, information and materials as reasonably requested by the Prepetition Agent or the Creditors' Committee.  In addition, the Debtors shall cooperate with and permit representatives of the Prepetition Agent to have reasonable access to their premises and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses).

14.     *Reservation of Rights of Prepetition Lenders.*

Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Lenders.  However, the Prepetition Agent and the Prepetition Lenders may request further or different adequate protection or may object to any request by the Debtors or any other party in interest with respect to any financing other than the DIP Facility, and the Debtors or any other party may contest any such request or objection.  The Debtors may object to any additional request for adequate protection.  Except as expressly provided herein, nothing contained in the

---

[3]  The Debtors shall pay invoices of such professionals in accordance with the procedures detailed in footnote 2 above.

Interim Order or this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent, any Prepetition Lender, the DIP Agent or any DIP Lender including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).

15.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     Subject to the provisions of paragraph 9(a) above, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent on behalf of the DIP Lenders or Prepetition Agent on behalf of the Prepetition Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Final Order.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agent or the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and

all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

(c)     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agents all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agents may reasonably request to evidence, confirm, validate or perfect the DIP Liens and Adequate Protection Liens granted pursuant hereto.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or the Prepetition Lenders in accordance with the terms of the DIP Documents, the Interim Order and this Final Order.

16.     *Preservation of Rights Granted Under the Final Order.*

(a)     Unless all DIP Obligations and Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of the Interim Order or this Final Order without the prior

written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent, or (ii) an order dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent or the DIP Lenders, and, as applicable, the Prepetition Agent or the Prepetition Lenders pursuant to the Interim Order and this Final Order, shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order and this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such superpriority claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) of this paragraph.

(b) If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacation or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations incurred prior to such reversal, modification, vacation or stay, the Interim Order or this Final Order with respect to any Adequate Protection Obligations incurred prior to

such reversal, modification, vacation or stay. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders prior to the actual receipt by the DIP Agent or the Prepetition Agent of written notice of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of the Interim Order or this Final Order, as applicable, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Facility with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(c)     Except as expressly provided in the Interim Order or this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders granted by the provisions of the Interim Order or this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superceding chapter 7 cases under the Bankruptcy Code, and the DIP

Obligations, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full.

17. *Effect of Stipulations on Third Parties*. The stipulations and admissions contained in the Interim Order and this Final Order, including, without limitation, in paragraph 4 of this Final Order, shall be binding upon the Debtors in all circumstances. The stipulations and admissions contained in the Interim Order and this Final Order, including, without limitation, in paragraph 4 of this Final Order, shall be binding upon all other parties in interest, including, without limitation, any Committee, unless (a) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 19) by no later than the date that is the later of (i) 90 days after the entry of the Interim Order, (ii) in the case of such an action being brought by a Committee (and the Committee is hereby granted standing to bring any such action), 90 days after the appointment of the Creditors' Committee, or (iii) such later date as has been agreed to, in writing, by the Prepetition Agent in respect of challenges that may be initiated against the Prepetition Agent or the Prepetition Lenders (A) challenging the validity, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens on the Prepetition Collateral or (B) otherwise asserting or prosecuting any Avoidance Actions or any other any claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims and Defenses**") against the Prepetition Agent or any of the Prepetition Lenders or their respective

agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the Prepetition Credit Documents, the Prepetition Secured Obligations, or the Prepetition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed, (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to be legal, valid, binding, perfected and of the priority described in paragraph 4(f), not subject to recharacterization, subordination, avoidance or reduction and (z) the Prepetition Secured Obligations, the Prepetition Liens on the Prepetition Collateral and the Prepetition Agent and the Prepetition Lenders shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of any of the Debtors' estates regarding any such challenge, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in the Interim Order and  paragraph 4 of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter.

18.    *Waiver of Claims and Causes of Action Against the DIP Lenders.*    Without prejudice to the rights of any other party, including any Committee (but subject to the limitations thereon in paragraphs 17 and 19), the Debtors have waived any and all claims and causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the DIP Facility, the Interim Order, this Final Order or the negotiation of the terms of any of the foregoing.

19.    *Limitation on Use of DIP Facility Proceeds and Collateral.*    The Debtors shall use the proceeds of the DIP Facility and the Cash Collateral solely as provided in the Interim Order, this Final Order, the DIP Budget and in the other DIP Documents.    Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Prepetition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Interim Order, this Final Order, the DIP Documents or the Prepetition Credit Documents, or the liens or claims granted under the Interim Order, this Final Order, the DIP Documents or the Prepetition Credit Documents, (b) assert any Claims and Defenses or causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility, the Prepetition Credit Documents or this Final Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the

Prepetition Agent or the Prepetition Lenders hereunder, under the DIP Facility or the Prepetition Credit Documents, in each foregoing case without such party's prior written consent, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the terms of the DIP Documents. The foregoing shall not apply to any investigation of potential Claims and Defenses or the Committee's ability to object to the DIP Motion.

20. *Final Order Governs*. In the event of any inconsistency between the provisions of the Interim Order, this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

21. *Binding Effect; Successors and Assigns*. The DIP Documents and the provisions of the Interim Order, this Final Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, any Committee, and any of the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and each of their respective successors and assigns; *provided*, *however*, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of any of the Debtors.

22.     *Limitation of Liability*.   In determining to make any loan under the DIP Documents or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute).  Furthermore, nothing in the Interim Order, this Final Order or in the DIP Documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders any liability for any claims arising from the pre-petition or post-petition activities by any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, or in connection with their restructuring efforts.  Nothing in this paragraph shall apply to any claim asserted under I.R.C. §3505 and/or I.R.C. §6673.

23.     *Right of Access and Information*.

(a)     The Debtors shall permit representatives, agents and/or employees of the DIP Agent to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

(b)     Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in the

29

Interim Order, this Final Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that a default has occurred and is continuing under the DIP Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Lenders, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the applicable Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent (on behalf of the DIP Lenders) shall only pay rent and additional rent obligations of the Debtors that first arise after the DIP Agent's written notice referenced above and that are payable during the period of such occupancy by the DIP Agent, calculated on a *per diem* basis. Other than the payment obligation contained in this paragraph, neither the DIP Agent nor the DIP Lenders shall be required to perform any of the Debtors' obligations under any lease as a condition to the rights afforded to the DIP Agent or the DIP Lenders in this paragraph. Furthermore, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the liens of the DIP Lenders in such Collateral.

24.     *Effectiveness*. This Final Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(g), shall take effect immediately upon execution hereof.

# # #

Prepared by:


By: /s/ Henry J. Kaim_____
     Henry J. Kaim
     Texas Bar No. 11075400
     HKaim@kslaw.com
     Mark W. Wege
     Texas Bar No. 21074225
     MWege@kslaw.com
     Edward L. Ripley
     Texas Bar No. 16935950
     ERipley@kslaw.com
     King & Spalding, LLP
     1100 Louisiana, Suite 4000
     Houston, Texas  77002
     Telephone:  (713) 751-3200
     Fax: (713) 751-3290

       - and -

By: /s/ Shelley D. Rucker_____
     Shelley D. Rucker
     Tennessee Bar No. 010098
     Email: SRucker@millermartin.com
     Nicholas W. Whittenburg
     Tennessee Bar No. 014524
     Email: NWhittenburg@millermartin.com
     Miller & Martin PLLC
     832 Georgia Avenue, Suite 1000
     Chattanooga, TN  37402-2289
     Phone: (423) 756-6600
     Fax: (423) 785-8480


**PROPOSED COUNSEL FOR
THE DEBTORS IN POSSESSION**