**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re** | § | |
| | § | |
| **PROPEX INC.,** | § | **Case No. 08-10249** |
| **PROPEX HOLDINGS INC.,** | § | **Case No. 08-10250** |
| **PROPEX CONCRETE SYSTEMS** | § | |
| **CORPORATION,** | § | **Case No. 08-10252** |
| **PROPEX FABRICS INTERNATIONAL** | § | |
| **HOLDINGS I INC.,** | § | **Case No. 08-10253** |
| **PROPEX FABRICS INTERNATIONAL** | § | |
| **HOLDINGS II INC.,** | § | **Case No. 08-10254** |
| | § | |
| **Debtors.** | § | |
| | § | **Chapter 11** |
| | § | |
| | § | **Jointly Administered Under** |
| | § | **Case No. 08-10249** |

**DEBTORS' MOTION TO (A) APPROVE BID PROCEDURES RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING A HEARING TO CONSIDER THE SALE; (C) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND REJECTION OF CERTAIN CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; AND (D) APPROVING BREAKUP FEE PROVISIONS
AND REQUEST FOR EXPEDITED HEARING**

---

Notice is hereby given that:

A hearing will be held on March 4, 2009 at 9:00am., in Courtroom 3A, of the Historic U.S. Courthouse, 31 East 11th Street, Chattanooga, Tennessee on the motion or other paper set forth below:

**DEBTORS' MOTION TO (A) APPROVE BID PROCEDURES RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING A HEARING TO CONSIDER THE SALE; (C) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND REJECTION OF CERTAIN CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; AND (D) APPROVING BREAKUP FEE PROVISIONS
AND REQUEST FOR EXPEDITED HEARING**

You are **further notified** that, if you oppose the relief sought below, you must file with the clerk of the court at 31 East 11th Street, Chattanooga, Tennessee 37402, an objection by 12:00 p.m. on March 2, 2009, and must serve a copy upon the movants' attorney(s), whose name(s) and address(es) are set forth below.

**If you do not want the court to grant the relief requested, you or your attorney must file a timely objection and attend this hearing. If you do not file an objection within the time permitted, and if you or your attorney do not attend the hearing, the court will consider that you do not oppose the granting of the relief sought in the motion and may grant the relief requested without further notice or hearing.**

Propex Inc. ("Propex"), Propex Holdings Inc. ("Holdings"), Propex Concrete Systems Corporation ("Concrete"), Propex Fabrics International Holdings I Inc. ("Fabrics I"), and Propex Fabrics International Holdings II Inc. ("Fabrics II"), each a debtor-in-possession (collectively, the "Debtors"), as debtors and debtors in possession, move this Court for entry of an order (the "Bid Procedures Order") (A) approving bid procedures ("Bid Procedures") relating to sale of substantially all of the Debtors' assets ("Assets"), which are attached as Exhibit A hereto, (B) scheduling a hearing to consider the sale, (C) establishing procedures relating to the assumption and assignment of certain contracts, including notice of proposed cure amounts, and (D) approving breakup fee provisions and, request for expedited hearing. In support of their Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## FACTS

2.  On January 18, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Tennessee, Southern Division (the "Court").

3.  On January 18, 2008, the Debtors filed a Motion for Joint Administration, which was granted by the Court on January 22, 2008. The Debtors are currently operating their businesses as debtors and debtors-in-possession. No request has been made for the appointment of a trustee

or examiner. The Official Committee of Unsecured Creditors has been formed in these cases and is represented by counsel and a financial advisor.

4. Holdings is a corporation that owns, directly or indirectly, 100% of the stock of Propex. Propex is a corporation that owns, directly or indirectly, 100% of the stock of Fabrics I, Fabrics II and Concrete. Propex functions as the Debtors' principal operating entity. Propex was formerly known as Proper Fabrics Inc. until the name was changed in June 2006. Prior to that, the company was known as AMOCO Fabrics and Fibers Company. The Debtors (with their predecessors) have been engaged in the textile industry since 1884.

## ADDITIONAL FACTS

5. The Interim DIP Order (and Final DIP Order) incorporates and recognizes that the Debtors shall market and offer for sale all the Assets as going concerns with the ultimate purchaser also assuming and retaining the Debtors' employees.[1] The DIP Orders included a specific time table for the marketing and sale process, as follows:

   a. February 10, 2009 - deadline for submission of a motion for approval of bid procedures and for a sale of all the Assets;[2]

   b. March 4, 2009 - deadline for Court approval of the bid procedures;

   c. March 23, 2009 - deadline for the auction; and

   d. March 24, 2009 - deadline for Court approval of the sale of the Assets to the highest and best bidder(s).

## RELIEF REQUESTED

6. By this Motion, the Debtors request that the Court enter an order approving the proposed Bid Procedures, attached hereto as Exhibit "A" and incorporated herein for all

---

[1] The Debtors do not anticipate any prospective buyer desiring to assume the Debtors' pension plan obligations. The Debtors are currently in discussions with the PBGC regarding those plans.

[2] By separate DIP amendments, the DIP Agent extended the February 10, 2009 deadline to February 17, 2009.

HOU_IMANAGE-685735 v4                                3

purposes, with respect to the proposed sale of substantially all of the Debtors' Assets (the "Proposed Sale"), as more fully set forth in that certain asset purchase agreement (the "<u>Agreement</u>"), by and between the Debtors and Xerxes Operating Company, L.L.C. and Xerxes Foreign Holdings Corp., entities majority-owned by Wayzata Opportunities Fund II L.P., an affiliate of the DIP Agent, (the "<u>Proposed Purchaser</u>").[3] The proposed Bid Procedures will allow the Debtors to determine the highest, best financial or otherwise superior offer for their Assets and will ensure that any contemplated transaction will be conducted in good faith. Furthermore, the Bid Procedures and Proposed Sale were negotiated by the Debtors and the Proposed Purchaser at arm's length and in good faith. The Agreement is the culmination of these intensive efforts.

7.    A purchaser's good faith may be satisfied where a sale is the product of arm's-length negotiations between parties. *See In re WBO Partnership*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) (stating that "[a] negotiation conducted at arm's length helps to ensure that the agreed price ultimately will be fair and reasonable"); *In re Apex Oil Co*., 92 B.R. 847, 870 (Bankr. E.D. Mo. 1988). Alternatively, lack of good faith is typically determined by actions that involve fraudulent conduct, collusion or an attempt to take unfair advantage of other bidders during the sale proceedings. *See In re Willemain*, 764 F.2d 1019, 1023 (4th Cir. 1985).

8.    The proposed Bid Procedures require any potential disposition, including the Proposed Sale, to be an arm's-length transaction. Furthermore, the Bid Procedures take into account the fact that the Proposed Purchaser has expended, and likely will continue to expend, considerable time, money, and energy pursuing the Proposed Sale. Recognizing this expenditure

---

[3] By separate motion, the Debtors are seeking approval of a sale free and clear of liens, claims, encumbrances, and interests of substantially all of the Debtors' assets and assumption and assignment of designated contracts. Unless defined herein, capitalized terms have the definitions set forth in the Bid Procedures and the Agreement.

of time, energy and resources, the Debtors have agreed to pay the Breakup Fee to the Proposed Purchaser on the terms and conditions set forth in the Agreement.

9. Specifically, the proposed Bid Procedures Order attached hereto provides that the Breakup Fee shall both be funded from the Good Faith Deposit of the Successful Bidder for the Debtors' Assets, or to the extent necessary, from the Debtors' other assets. The Breakup Fee shall survive any termination of the Agreement and, until paid in full, in cash, shall constitute a superpriority administrative expense claim under § 364(c)(1) in favor of the Proposed Purchaser having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(c) of the Bankruptcy Code.

10. In addition, the Breakup Fee shall both be secured by a first priority, unprimable security interests in the Good Faith Deposit of the Successful Bidder for the Assets, which shall be fully perfected, without need for further action, execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, to perfect such security interest and, as noted above, shall be deemed an allowed super priority administrative expense under sections 503(b)(1) and 364(c)(1) of the Bankruptcy Code. Such lien shall not be subject, or subordinate, to any other security interests in or liens upon the Good Faith Deposit.

11. The Breakup Fee is (i) a material inducement for, and condition of, the Proposed Purchaser's entry into the Agreement and (ii) fair and reasonable in view of the fact that, if the Breakup Fee is triggered, the Proposed Purchaser's efforts will have increased the chances that the Debtors will receive the highest or otherwise best offer for the Assets.

12. With respect to the Breakup Fee, courts have developed various approaches to analyze the necessity and reasonableness of bidder protections.[4] While the cases note that there is no uniform standard to be applied, the same theme runs throughout all of these decisions: whether bidder protections will contribute to the debtors receiving the highest and best offer for the sale of their assets.[5] This Court's sister court in Nashville, in circumstances very similar to those here, just a few months ago was called upon to decide the appropriateness of certain bidder protections. *Nashville Senior Living,* 2008 Bankr. LEXIS 3197 (Bankr. M.D. Tenn., Oct. 22, 2008). The *Nashville Senior Living* court applied a seven-factor test under a "totality of the circumstances" rationale, upholding the bidder protections which included a breakup fee. *Id*. at *7-8.

13. The proposed Bid Procedures will also ensure that that any price obtained for the Assets will be fair and reasonable. Although the Debtors have entered into the Agreement with the Proposed Purchaser, the transaction contemplated by the Agreement is subject to competitive bidding as set forth in the Bid Procedures. The competitive bidding process should enable the Debtors to capture value from the Assets and the executory contracts and leases identified by the Proposed Purchaser to be assumed and assigned (the "Designated Contracts"), all for the benefit of the Debtors' estates and creditors by taking full advantage of the potential buyer pool. Furthermore, the marketing efforts undertaken by the Debtors will ensure that any successful

---

[4] *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999) (utilizing "general administrative expense jurisprudence" under Section 503(b)); *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (utilizing the "business judgment rule"); *In re Nashville Senior Living, et al.*, 2008 Bankr. LEXIS 3197, at *6-7 (Bankr. M.D. Tenn. Oct. 22, 2008) (citing *In re Hupp Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992)) (utilizing a seven-factor test in determining whether the bidder protections are reasonable under the "totality of the circumstances"); *In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) ("The proposed break-up fee must be carefully scrutinized to insure that the Debtor's estate is not unduly burdened and that the relative rights of the parties in interest are protected.").

[5] In analyzing this theme, the differing approaches utilize similar factors. *See Calpine Corp.*, 181 F.3d 527, 537; *Integrated Res.*, 147 B.R. 650, 659-60; *Nashville Senior Living*, 2008 Bankr. LEXIS 3197, at *7; *America West Airlines*, 166 B.R. at 913.

bids represent a fair value for the Assets. *See In re W.A. Mallory Co.*, 214 B.R. 834, 837-38 (E.D. Va. 1997).

14. The flexibility provided by the Bid Procedures is consistent with the discretion typically afforded procedures governing the disposition of assets under section 363(b). *See id.* at 838 ("Establishing an arbitrary percentage which a proposed purchase price needs to meet before a sale is consummated does not serve the purposes of the Bankruptcy Code . . ."). If a party raises legitimate concerns about the extent to which the Bid Procedures will ensure fair value for the Assets, the Debtors intend to present evidence at the Sale Hearing confirming that such a price is reasonable under the circumstances.

15. Eligible bids will be analyzed with respect to the bidder's ability to consummate a transaction swiftly for all the Assets. The open Auction will also provide transparency to the bidding process and make reasonably certain that any successful bid is the highest or otherwise best bid for such asset, all in consultation with the DIP Agent, BNP and the Creditors' Committee.

16. As part of the Proposed Sale, the Debtors will be assuming and assigning certain potential Designated Contracts as part of the sale process. In order to facilitate the sale, assumption, and assignment of contracts, and to ensure adequate notice and a fair bidding process, the Debtors also seek approval of procedures for assumption and assignment of contracts, as described in the attached Bid Procedures Order. These procedures seek to provide notice to the non-debtor contract party of proposed assumption and assignment of contracts and the applicable cure amounts with a procedure for such non-debtor party to object. The notices to be distributed in conjunction with the assumption and/or assignment of any potential Designated Contracts, as well as in conjunction with any sale of the Debtors' assets are attached to this

Motion substantially in the form of the <u>Exhibits</u> <u>B</u> and <u>C</u>. The Debtors request that the Court approve the form and use of such notices in conjunction with the proposed sale and any assumption and/or assignment of potential Designated Contracts.

17.  Pursuant to Bankruptcy Code section 363(k), the Debtors are requesting that the Court not permit any credit bidding.[6] "Cause" exists here due to the circumstances including, but not limited to, the Bid Procedures are premised on an all cash sale. The Proposed Sale requires cash amounts for *inter alia*, satisfying the existing DIP Facility, paying assumed and assigned contract cure amounts and satisfying incurred but unpaid ordinary course administrative expenses. Allowing the possibility of other parties to credit bid in these cases would "chill the bidding" due to the substantial amount of the outstanding pre-petition term debt (approximately $230 million) in comparison to the reasonable range of values. Moreover, the term debt is held not by one lender, but a group of many lenders, and these facts create various legal issues on who is entitled to credit bid, for what amount, and if less than all lenders credit bid, allocation amongst non-credit bidding lenders. The potential of such a huge credit bid would thus chill the bidding. Under the circumstances of these cases and the Proposed Sale, credit bidding should not be permitted.

18.  In sum, the proposed Bid Procedures attached hereto reflect a sound business purpose and are a valid exercise of the Debtors' business judgment.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order approving the Bid Procedures, as attached hereto; scheduling a hearing to consider the sale; approving the Breakup Fee to the Proposed Purchaser, as described in the Agreement; approving the procedure related to the assumption and assignment of potential Designated Contracts; approving the form

---

[6] As set forth in the Agreement, any Overbid by the Proposed Purchaser shall be deemed to include an amount equal to the Breakup Fee, a type of credit bid, solely for purposes of determining the highest and best bid.

and use of notices related thereto; and granting such other and further relief to the Debtors as the Court may deem proper.

Respectfully submitted this 17th day of February, 2009.

**KING & SPALDING LLP**

By: /s/ Henry J. Kaim_____
    Henry J. Kaim
    Texas Bar No. 11075400
    HKaim@kslaw.com
    Mark W. Wege
    Texas Bar No. 21074225
    MWege@kslaw.com
    Edward L. Ripley
    Texas Bar No. 16935950
    ERipley@kslaw.com
    King & Spalding, LLP
    1100 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:  (713) 751-3200
    Fax: (713) 751-3290

        - and -

Shelley D. Rucker
Tennessee Bar No. 010098
Miller & Martin PLLC
832 Georgia Avenue, Suite 1000
Chattanooga, TN  37402-2289
Phone: (423) 785-8289
Fax: (423) 785-8480
Email: srucker@millermartin.com

**COUNSEL FOR
THE DEBTORS IN POSSESSION**