IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | § § | |
| PROPEX INC., | § | Case No. 08-10249 |
| PROPEX HOLDINGS INC., | § | Case No. 08-10250 |
| PROPEX CONCRETE SYSTEMS CORPORATION, | § § § | Case No. 08-10252 |
| PROPEX FABRICS INTERNATIONAL HOLDINGS I INC., | § § | Case No. 08-10253 |
| PROPEX FABRICS INTERNATIONAL HOLDINGS II INC., | § § | Case No. 08-10254 |
| Debtors. | § § § | Chapter 11 |
| | § § | Jointly Administered Under |
| | § | Case No. 08-10249 |

**DEBTORS' CONSOLIDATED RESPONSE TO OBJECTIONS TO DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND BANKRUPTCY RULES 6004 AND 6006 AND SUBJECT THERETO (A) FOR THE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO THE HIGHEST BIDDER AND (B) FOR THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS**
(this relates to Docket Nos. 891, 952, & 953)

Propex Inc. ("Propex"), Propex Holdings Inc. ("Holdings"), Propex Concrete Systems Corporation ("Concrete"), Propex Fabrics International Holdings I Inc. ("Fabrics I"), and Propex Fabrics International Holdings II Inc. ("Fabrics II"), each a debtor-in-possession (collectively, the "Debtors"), pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 6004 and 6006, hereby file their consolidated response (the "Response")[1] to the objections of Black Diamond Capital Management, Inc.

---

[1] Capitalized terms not defined herein are defined in the Sale Motion.

("Black Diamond") and BNP Paribas ("BNP")[2] to the Debtors' Motion Pursuant to Bankruptcy Code Sections 363 and 365 and Bankruptcy Rules 6004 and 6006 and Subject Thereto (A) For the Sale Free and Clear of Liens, Claims, Encumbrances and Interests of Substantially All of the Debtors' Assets to the Highest Bidder and (B) For the Assumption and Assignment of Designated Contracts (the "Sale Motion"). In support of this Response, the Debtors respectfully represent as follows:

## INTRODUCTION AND BACKGROUND

1.  On March 18, 2009, Black Diamond filed its conditional objection (the "Black Diamond Objection")[3] to the Sale Motion. Docket No. 952. Later that same day, BNP[4] (together with Black Diamond, the "Prepetition Lenders") filed its conditional objection (the "BNP Objection", together with the Black Diamond Objection, the "Prepetition Lender Objections") to the Sale Motion. Docket No. 953. The Prepetition Lender Objections provide overlapping arguments (with slight variations, which will be addressed below), which, in summation, incorrectly argue that section 363(f) does not allow the Debtors to sell their assets

---

[2] Objections to the Sale Motion were also filed by (i) the Pension Benefit Guaranty Corporation, (ii) SAP America, Inc., (iii) the Trustee for Hamilton County, Tennessee, (iv) Jeff Davis County, Georgia, (v) Dell, Inc. and (v) ACE American Insurance Company (collectively, the "Contract Objections"). The Contract Objections only deal with the assumption and assignment of contracts and either dispute (i) the cure amount provided in the asset purchase agreement or (ii) the Debtors' authority to assign such contracts. The Debtors are filing a motion requesting the continuation of the Contract Objections to April 1, 2009, with the consent of the parties who filed the Contract Objections.

[3] In the introduction to its objection, Black Diamond contends that the proposed sale of the Debtors' assets represents a *sub rosa* plan. Black Diamond Objection, p. 3. As the Court is aware, the Creditors Committee made this exact argument in its objection to the Debtors' motion for Court authority to obtain financing from Wayzata Investment Partners LLC. Docket No. 841, pp. 8-12. The Court overruled this unfounded *sub rosa* argument pursuant to its entry of its Interim and Final DIP Orders granting the requested financing. Docket Nos. 869 & 881. Furthermore, the Court-approved DIP Financing Agreement with Wayzata contemplates the sale of substantially all of the Debtors' assets. Black Diamond improperly seeks to relitigate this meritless *sub rosa* argument on which the Court has already ruled. Its attempt to do so should be summarily denied.

[4] BNP is the administrative agent to the pre-petition lender group, of which Black Diamond is a member. As such, the Debtors' responses in this argument to the Pre-Petition Lender Objections apply with equal force to both parties since they represent the same interests in these bankruptcy cases. Notably, BNP has stated that only 50.75% of the lender debt has authorized its actions.

free and clear of the Prepetition Lenders' liens. However, the plain language of the Bankruptcy Code and caselaw support the free and clear sale of the Debtors' assets pursuant to several subsections of section 363(f) of the Bankruptcy Code. The Court need only find a single subsection applicable to approve the sale free and clear. Appropriately, there is more than ample legal authority for the Court to do so. In summary, the section 363(f) subsections in support of the relief requested in the Sale Motion are as follows:[5]

> a. Section 363(f)(3) authorizes a free and clear sale of the Debtors' assets so long as the Debtors obtain the highest and best possible price for the assets under the circumstances. The Court has approved bidding and auction procedures, and the Debtors have conducted a fair and open bidding and auction process per the Court's order (and no party has contended otherwise). Such an open and public process ensures that the Debtors will receive the highest and best possible price for the Debtors' assets. In fact, the Debtors have already received overbids above its stalking horse bid and expect to receive higher offers during the March 23 auction.
>
> b. Section 363(f)(4) authorizes a free and clear sale of the Debtors' assets since the Prepetition Lenders' liens are subject to a bona fide dispute. The Creditors Committee's adversary complaint challenging the liens of the Pre-Petition Lenders is still ongoing and no resolution to this dispute is expected prior to the March 24 sale hearing before this Court.
>
> c. Section 363(f)(5) authorizes a free and clear sale of the Debtors' assets since the Prepetition Lenders can be compelled, pursuant to the cram-down procedure provided under the Bankruptcy Code, to accept a money satisfaction in an amount less than the face value of their debt.

2.    Furthermore, it is surprising that the Pre-Petition Lenders now object to the sale of the Debtors' assets when they themselves (along with all other creditor groups) previously stated that they wanted such a sale. *See* Docket No. 899, p. 2 (In its objection to the Bid Procedures

---

[5] As further support for the free and clear sale of the Debtors' assets, the Debtors adopt the arguments made by Wayzata Investment Partners LLC and Wayzata Opportunities Fund II L.P. in <u>Wayzata's (I) Reply (A) To Expedited Motion To Credit Bid And (B) In Support Of Bid Procedures Order And Sale Motion; (II) Request For Determination Of Qualified Bidder Status And (III) Request For Related Relief</u> (Docket No. 991).

Motion, BNP states that **"[t]he Prepetition Lenders agree that the Debtors' estates are a wasting asset and that these chapter 11 cases must be brought to a conclusion in order to halt the further depletion of the value of the Debtors' estates."**) (emphasis added); Docket No. 904, p. 2 (In its objection to the Bid Procedures Motion, Black Diamond states that **"BDCM readily acknowledges that the Debtors should sell their assets, and sell them within the time frame proposed in the [Bid Procedures] Motion."**) (emphasis added); Docket No. 953, p. 2 (In its objection to the Sale Motion, BNP again states **"that the Debtors' estates are wasting assets and ... there should therefore be a prompt sale of those assets."**) (emphasis added).

3. Consistent with the Prepetition Lenders' own acknowledgements, the Debtors have exhibited a sound business purpose in seeking a sale of their assets and have received various Court orders setting out timelines and approving bidding and auction procedures. Importantly, the Debtors have instituted an open and public bidding process which will yield the highest and best obtainable price for their assets (and will clearly be greater than any price that could be obtained in a "fire sale" liquidation process). Considering the Prepetition Lenders' own admissions that the Debtors' estates are wasting assets that must be quickly sold to avoid further depletion, the sale must go through, and the Prepetition Lenders' objections must be overruled.

4. Furthermore, this Court's entry of its order approving bidding and auction procedures (Docket No. 924) (the "Bid Procedures Order") was based on a sale preserving the Debtors' businesses as a "going concern." In the Bid Procedures Order, the Court found that "[t]he Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, the Court scheduling an Auction and subsequent Sale Hearing to consider approval of the Proposed Sale and the transfer of the Assets to the Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code §

363(f)(4)." Bid Procedures Order, pp. 3-4. The Court recognized that a free and clear sale is necessary to the Debtors' receiving the highest and best offers since no party will bid on any other basis. Notably, even the bid submitted by BNP on behalf of Black Diamond, which is still subject to a dispute concerning whether it constitutes a Qualifying Bid under the Bid Procedures Order, is also based on a sale of the Debtors' assets free and clear of all liens, claims, interests, and encumbrances.

5. Yet, instead of raising issues regarding the propriety of a section 363 sale more than a month ago when the Debtors filed their Sale Motion, BNP and Black Diamond have waited until this late stage of the bankruptcy proceedings to raise the prospect of a "fire sale" liquidation of the Debtors' assets, despite their earlier assertions that they fully supported a section 363 sale. *See* Docket No. 899, p. 2 (In its objection to the bidding procedures, BNP states that "**[t]he Prepetition Lenders ... support a sale of the Debtors' estates, as well as the proposed timeline with respect to such sale....**") (emphasis added); Docket No. 904, p. 2 (In its objection to the bidding procedures, Black Diamond states that it "**readily acknowledges that the Debtors should sell their assets, and sell them within the time frame proposed in the [Bid Procedures] Motion.**"). The Debtors submit that since BNP and Black Diamond failed to raise these arguments prior to the Court's entry of the Bid Procedures Order, and in fact readily supported the sale of the Debtors' assets, their assertions are barred by the doctrines of judicial estoppel and res judicata.

6. The Debtors also note that, in addition to the sales proceeds which BNP and Black Diamond would assert claims against, the Prepetition Lenders have already been paid over $20 million in adequate protection payments for interest and fees over the last 14 months. These payments are clearly not provided for in payment of their claims based on Bankruptcy Code §

506(b) or the facts before the Court, and reflect a significant return already on the Prepetition Lenders' claim, in addition to the Prepetition Lenders' assertions against any net sales proceeds.

## LEGAL BASIS FOR REQUESTED RELIEF[6]

### A. Section 363(f)(3) Authorizes the Sale of the Debtors' Assets Free and Clear of All Liens

7.   11 U.S.C. § 363(f)(3) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if ... (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate *value* of all liens on the property....

11 U.S.C. § 363(f)(3) (emphasis added).

8.   There is a split of authority regarding the interpretation to be provided to "value" in section 363(f)(3). According to one court, "a majority of the courts that have confronted the issue have adopted the 'economic value of the lien' approach" (the "Economic Value Test"). *In re Canonigo*, 276 B.R. 257, 260 (Bankr. N.D. Cal. 2002). *See, e.g., Milford Group, Inc. v. Concrete Step Units, Inc. (In re Milford Group, Inc.)*, 150 B.R. 904, 906 (Bankr. M.D. Pa. 1992) (holding that "value" is determined according to the Economic Value Test); *In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990) (same). Under the Economic Value Test, section 363(f)(3) is satisfied if a debtor's sale of assets yields a return equal to the actual value, i.e. fair market value, of the assets. *See In re Beker Indus. Corp.*, 63 B.R. 474, 476 (Bankr. S.D.N.Y. 1986). The Debtors submit that this majority interpretation is consistent with the plain language of the Bankruptcy Code:

---

[6] Usually, a Court's determination of issues involving section 363(f) are only reached upon a prior finding that the debtor has articulated a sound business purpose for a sale of assets. Neither the Black Diamond Objection nor the BNP Objection contest the Debtors' sound business judgment; in fact, and as set forth above, Black Diamond's and BNP's own admissions lend support to the sound business purpose of the sale of the Debtors' assets.

> The 'starting point' in the exercise of statutory construction is the language of the statute itself.
>
> ...
>
> It is well settled that in construing statutory language, terms of particular meaning to the subject matter of the statute are to be interpreted in line with that meaning and in light of other provisions of the statute.
>
> Here, the term "value" has such meaning. That term is employed in the same context in § 506(a). There it is provided that
>
>> An allowed claim of a creditor secured by a lien on property [of the estate] .... is a secured claim to the extent of the *value* of such creditor's interest in the estate's interest in such property .... and is an unsecured claim to the extent that the *value* of such creditor's interest .... is less than the amount of such allowed claim. Such *value* shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> (emphasis added). It is thus plainly indicated that the term "value", as used in § 506(a) with respect to the interest of a secured creditor, means *its actual value* as determined by the Court, as distinguished from the amount of the lien. That indication and the last sentence of § 506(a) requiring determination of value upon disposition of an asset standing as collateral strongly support the conclusion that the term "value", as employed in § 363(f)(3) is to be similarly interpreted.

*In re WPRV-TV, Inc.*, 143 B.R. 315, 320-21 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (1992), *aff'd, in part, and rev'd, in part, on other grounds*, 983 F.2d 336 (1st Cir. 1993) (quoting *Beker*, 63 B.R. at 475-476) (emphasis added by court) (internal citations omitted).

9. Under the Economic Value Test, an open and public bidding and auction process usually yields the actual value of the assets, thereby satisfying the tenets of Section 363(f)(3). *See Seidle v. Modular Paving, Inc. (In re 18th Ave. Dev. Corp.)*, 14 B.R. 862 (Bankr. S.D. Fla. 1981) ("By marketing the Debtor's property in an orderly fashion at the highest possible price, the Trustee is insuring that the interest of the above styled Defendants to the extent there is value

of said interest, will be adequately protected."). Neither Black Diamond nor BNP has contended that the Debtors' bidding and auction process has been anything less than fair, open and public. Therefore, the culmination of the Debtors' efforts during the bidding and sales process will yield the highest and best price obtainable, i.e. the fair market value, for the Debtors' assets. In fact, the Debtors have already received overbids above the stalking horse bid and expect to receive additional higher bids at the March 23 auction.

10. A minority of courts, however, hold that "value" under section 363(f)(3) refers to the value of all liens encumbering the property (the "Face Value Test"). *See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 41 (B.A.P. 9th Cir. 2008); *Canonigo*, 276 B.R. 257 (adopting the minority view).[7] The Face Value Test is "a highly criticized and unduly strict interpretation of the Bankruptcy Code." *See WPRV-TV*, 143 B.R. at 319.

11. Nonetheless, even the Face Value Test recognizes that "[i]f equitable considerations dictate then the court may approve a sale free and clear of liens even though the creditors receive less than full satisfaction of their interests." *Id.* at 321 (citing cases) (internal quotation marks omitted). The Debtors submit that such equitable considerations are applicable here. As previously set forth, the Debtors have conducted a fair, open, and public bidding and sale process. Further, the Debtors have received overbids above the stalking horse bid, and the Debtors expect to receive additional higher bids at the March 23 auction. Moreover, BNP, the agent for the Prepetition Lenders, even recognizes that "there should therefore be a prompt sale of [the Debtors'] assets." BNP Objection, p. 2. As such, the Debtors contend that, to the extent the Court adopts the minority Face Value Test, special circumstances exist under this legal

---

[7] The Sixth Circuit, in dicta, observed, without ruling on the issue, a creditor's argument that section 363(f)(3) incorporates the Face Value Test. *See Detroit Edison Co. v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 241 n.4 (6th Cir. 1987).

theory for a sale of the Debtors' assets, free and clear of liens, claims, encumbrances and interests.

### B. 11 U.S.C. § 363(f)(4) Authorizes the Sale of the Debtors' Assets Free and Clear of the Prepetition Lenders' Liens

12. 11 U.S.C. § 363(f)(4) provides:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any **interest** in such property of an entity other than the estate, if ... (4) such interest is in bona fide dispute....

11 U.S.C. § 11 U.S.C. § 363(f)(4) (emphasis added). "A 'bona fide dispute' exists under § 363(f)(4) when there is an objective basis for either factual or legal dispute as to the validity of an interest in property." *In re Downour*, 2007 WL 963258, at *1 (Bankr. N.D. Ohio March 28, 2007) (unpublished). BNP has already admitted that such a factual and legal dispute exists regarding the validity of the Prepetition Lenders' liens. *See* Docket No. 899, p. 6 n.6 (In its objection to the proposed bidding and auction procedures, BNP notes that **"the validity and extent of the Prepetition Liens are the subject of ongoing disputes with the Creditors' Committee."**) (emphasis added). Further, "[t]he case law construing § 363(f)(4) is uniform in holding that this standard does not require the court to resolve the dispute, just to determine its existence." *Downour*, 2007 WL 963258, at *1. "Moreover, where the interest in issue is a lien, the propriety of the lien does not have to be the subject of an immediate or concurrent adversary proceeding to be subject to a bona fide dispute." *Id.* Here, the bona fide dispute regarding the Prepetition Lenders' liens does exist within the confines of an adversary proceeding.

13. As the Court is aware, the Creditors Committee filed a complaint against the Prepetition Lenders regarding the validity of their prepetition liens on the Debtors' assets (the "Lien Complaint"). The Prepetition Lenders attempt to blatantly ignore this bona fide dispute

regarding their liens by stating that some of the Creditors Committee's claims have been dismissed by the Court. Notably, this generic statement ignores the facts, the law, and BNP's prior statements. The Lien Complaint still asserts viable, ongoing claims and causes of action against the Prepetition Lenders' liens, which will not be resolved prior to this Court's March 24 sale hearing. Per the plain text of section 363(f)(4), applicable caselaw, and BNP's own admission, the Prepetition Lenders' liens are in bona fide dispute, which makes a sale free and clear under section 363(f)(4) proper and legally justified. "The very purpose of § 363(f)(4) is to allow the sale of property of the estate free and clear of disputed interests so the liquidation of the assets is not unnecessarily delayed while the disputes are being litigated." *Downour*, 2007 WL 963258, at *1. "Time is now of the essence with respect to this property." *Id.* Therefore, the BNP Objection and the Black Diamond Objection should be overruled.

### C. 11 U.S.C. § 363(f)(5) Authorizes the Sale of the Debtors' Assets Free and Clear of the Prepetition Lenders' Liens

14. 11 U.S.C. § 363(f)(5) provides:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any **interest** in such property of an entity other than the estate, if … (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(5) (emphasis added).

15. In its objection, BNP first contends that "**[l]iens** are but one of the **interests** that can be extinguished under section 363(f)." BNP Objection, p. 8 (emphasis added). Then, paradoxically, BNP contends that the term "interests" in section 363(f)(5) does not include "liens," thereby rendering section 363(f)(5) inapplicable. BNP's argument is both internally inconsistent and runs contrary to the plain language of the Bankruptcy Code definition of a "lien": "[t]he term 'lien' means charge against or **interest** in property to secure payment of a

debt or performance of an obligation." 11 U.S.C. § 101(37) (emphasis added). Further, the preamble to Section 363(f) begins with a discussion of "interest" and later, in section 363(f)(3), carves out "liens" as a type of interest. *See* 11 U.S.C. § 363(f)(3) (a free and clear sale is authorized if **"such interest is a lien...."**) (emphasis added). *See also In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) (quoting 3 Collier on Bankruptcy, ¶ 363.06[1]) ("Certainly a lien is a type of 'interest' of which the property may be sold free and clear. This becomes apparent in reviewing section 363(f)(3), which provides for particular treatment when 'such interest is a lien.'"). Therefore, a lien is an interest within the meaning of Section 363(f), and section 363(f)(5) is applicable. Any contentions to the contrary in the BNP Objection are completely without merit.

16. Section 363(f)(5) requires that there be a legal or equitable proceeding compelling the creditor to accept a money satisfaction. Several courts, including courts within the Sixth Circuit, have determined that the "cram-down" procedure of Section 1129 provides such a "legal or equitable proceeding", contrary to conflicting assertions in the BNP Objection.[8] *See In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 464 (Bankr. E.D. Mich. 1995); *Hunt Energy Co., Inc. v. United States (In re Hunt Energy Co., Inc.)*, 48 B.R. 472, 485 (Bankr. N.D. Ohio 1985).

17. A debtor-in-possession can cram-down a secured creditor if such creditor receives the "indubitable equivalent" of its claim. *Hunt Energy*, 48 B.R. at 485.[9] In a case cited in the BNP Objection, the Fifth Circuit held that a secured creditor receives the indubitable equivalent

---

[8] Unlike BNP, Black Diamond makes no assertion that a cram-down is not available under section 363(f)(5).

[9] In its objection, BNP states that, in order to effectuate a cram-down, the Debtors must also demonstrate that (i) they are not unfairly discriminating against the secured creditors and (ii) the Debtors are acting in good faith. BNP Objection, p. 10. The Debtors meet both of these factors. First, the Debtors are not unfairly discriminating against the Prepetition Lenders since both BNP and Black Diamond, who would be under the same class in a Chapter 11 plan, are not being treated differently with regard to their claims. Second, the Debtors' are acting in good faith in seeking to sell its assets pursuant to a Court-approved bidding and auction process, which process is supported by the Prepetition Lenders' assertions that the Debtors' estates are wasting assets and that a prompt sale of such assets is in the best interests of creditors and the estates.

of its secured claim under a cram-down when such creditor receives the fair market value of the property. *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1350 (5th Cir. 1989). As set forth above, the Court-approved bidding and auction process will yield proceeds equivalent to the fair market value of the Debtors' assets, which will inure to the Prepetition Lenders' benefit and thereby provide them with the indubitable equivalent of their secured claims.[10] *See Grand Slam*, 178 B.R. at 462 ("Thus, in a 'cram down' procedure, a trustee may sell the assets of an estate free and clear, without the consent of a secured creditor, if present or future payments are made to the secured creditor in an amount equal to the present value of the collateral, even if such value is less than the debt."). The fair market value for the property will provide greater value than will a piecemeal, "fire sale" liquidation of the property, thereby meeting the "best interests of creditors" test, contrary to the unsupported assertions made in the Prepetition Lenders' Objections (which summarily note, without support, that it is "possible" that the value received from the auction will be less than the liquidation value). Therefore, the Debtors are providing the Prepetition Lenders with the indubitable equivalent of their secured claims. The Prepetition Lender Objections should be overruled.

**D.    *The Sale of the Debtors' Assets is the Product of a Sound Business Purpose***

18.    Under the laws of this Circuit, a court may approve a sale of a debtor's assets under Section 363(b) "when a sound business purpose dictates such action." *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard. *See In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not

---

[10] The Prepetition Lenders are also receiving the "indubitable equivalent" of their claims since their liens will attach to the available proceeds of the sale. *See WPRV-TV*, 143 B.R. at 318 ("The proposed sale provides adequate protection to lien holds since liens attach to sale proceeds....").

believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw."). Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enters., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

19.    This Court has already heard testimony and concluded that the proposed sale of the Debtors' assets is justified by the circumstances of the Debtors' Chapter 11 cases and in the best interests of the Debtors' estates and creditors. *See* Bid Procedures Order, pp. 3-4 ("The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, the Court scheduling an Auction and subsequent Sale Hearing to consider approval of the Proposed Sale and the transfer of the Assets to the Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code § 363(f)(4).").

20.    Furthermore, the sale of the Debtors' assets is further justified since the proposed sale, as opposed to a liquidation, preserves thousands of jobs. Courts have found this factor to be a valid justification for approving sales free and clear of creditors' claims. *See In re Trans World*, 322 F.3d at 293 ("Given the strong likelihood of a liquidation absent the asset sale to America, … we agree with the Bankruptcy Court that a sale of the assets of TWA at the expense of preserving successor liability claims was necessary in order to preserve some 20,000 jobs….").

21.     The sale of the Debtors' assets is the product of a sound business purpose and satisfies the requirements of section 363(f) of the Bankruptcy Code. The Black Diamond Objection and BNP Objection should be overruled.

### E.  Judicial Estoppel Bars the Prepetition Lenders' Objections

22.     "Judicial estoppel 'preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 424 (6th Cir. July 6, 2005) (unpublished) (quoting *Brown v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002)). Judicial estoppel is a rule which prevents parties from "'playing fast and loose with the courts', 'blowing hot and cold as the occasion demands', or 'hav[ing] [one's] cake and eat[ing] it too.'" *Lewis*, 141 Fed. Appx. At 424 (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988)). Although the doctrine of judicial estoppel is not reducible to any specific formula, "the Supreme Court identified three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding[] would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Lewis*, 141 Fed. Appx. at 424-25 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 524 U.S. 742, 750-51 (2001)).

23.     While this Court was considering the bidding and auction procedures proposed by the Debtors more than a month ago, as well as the Wayzata DIP Loan's terms and conditions, the

Prepetition Lenders unequivocally expressed their support to the Court,[11] on more than one occasion, regarding the propriety of a section 363 sale of the Debtors' assets. *See* Docket No. 899, p. 2 (In its objection to the bidding procedures, BNP states that **"[t]he Prepetition Lenders ... support a sale of the Debtors' estates, as well as the proposed timeline with respect to such sale...."**) (emphasis added); Docket No. 904, p. 2 (In its objection to the bidding procedures, Black Diamond states that it **"readily acknowledges that the Debtors should sell their assets, and sell them within the time frame proposed in the [Bid Procedures] Motion."**) (emphasis added). The Court relied on the Prepetition Lenders' support for a section 363 sale in entering its Bid Procedures Order, which recognized that "the best interests of their estates will be served by, the Court scheduling an Auction and subsequent Sale Hearing to consider approval of the Proposed Sale and the transfer of the Assets to the Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code § 363(f)(4)." Bid Procedures Order, pp. 3-4. Now, however, the Prepetition Lenders assert a contrary position and appear to argue their support for a "fire sale" liquidation instead of the section 363 sale which they previously supported and the Court held to be in the best interests of creditors. Such a position, if accepted by the Court, will impose an unfair detriment on the Debtors and other parties who have participated in the bidding and sale process. In reliance on the support of the Prepetition Lenders to a section 363 sale, and in reliance on this Court's prior order regarding the propriety of a section 363 sale, the Debtors have expended time and resources to conduct a fair, open and public bidding and sale process which will yield the highest and best offer for the Debtors' assets. Acceptance of the Prepetition Lenders' contrary position at this late stage of the bankruptcy case will culminate in the Debtors' receiving less revenue for

---

[11] In fact, Black Diamond's offer for a DIP Loan, made in open court, was on the exact same sale terms as Wayzata's DIP Loan, contemplating a section 363 process along the same timeframe and terms as was approved by the Court.

their assets in a "fire sale" liquidation. This will harm not only the Debtors but also their creditors, including the Prepetition Lenders. Therefore, the Prepetition Lenders are judicially estopped from arguing against the propriety of a section 363 sale.

F.   **Res Judicata Bars the Prepetition Lenders' Objections**

24.   "[A] claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002)). All of these factors are met in this case.

25.   The first factor is met because the Court has previously entered its Bid Procedures Order, which, as set forth above, recognized that setting a hearing regarding a sale of the Debtors' assets under section 363 was in the best interests of the Debtors' estates and their creditors.

26.   The second factor is met because the same parties (BNP, Black Diamond and the Debtors) were involved in this Court's prior hearing approving the bidding and auctions and are involved in the present dispute regarding the propriety of the relief requested in the Sale Motion.

27.   The third factor is met because in this Court's hearing regarding the bidding and auction procedures, both Black Diamond and BNP explicitly expressed their overwhelming support for a sale of the Debtors' assets pursuant to a section 363 process. *See* Docket No. 899, p. 2 (In its objection to the bidding procedures, BNP states that **"[t]he Prepetition Lenders ... support a sale of the Debtors' estates, as well as the proposed timeline with respect to such**

sale....") (emphasis added); Docket No. 904, p. 2 (In its objection to the bidding procedures, Black Diamond states that it **"readily acknowledges that the Debtors should sell their assets, and sell them within the time frame proposed in the [Bid Procedures] Motion."**) (emphasis added). Now, however, both BNP and Black Diamond appear to argue that a "fire sale" liquidation is preferable to a section 363 sale. As set forth above, not only is this clearly inconsistent with prior statements made by the Prepetition Lenders, but this is an issue which could have and should have been presented by BNP and Black Diamond at this Court's hearing considering the bidding and auction procedures.

28. Finally, the fourth factor is met because "the claims arose out of the same core of operative facts." *Id.* at 580 (internal quotation marks omitted) (quoting *Browning*, 283 F.3d at 773-74)). The underlying facts involve the avenue by which the Debtors' may sell their assets to realize the highest and best gain for their estates and creditors. Pursuant to its entry of the Bid Procedures Order, this Court recognized that the section 363 process is the best avenue, and, as set forth above, the Prepetition Lenders readily agreed with this conclusion. Now, however, the Prepetition Lenders appear to argue that a "fire sale" liquidation is the avenue the Debtors should be pursuing. This they cannot do based on the doctrine of res judicata.

### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Debtors request this Court to (i) overrule the Black Diamond Objection and the BNP Objection, and (ii) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 22d day of March, 2009.

**KING & SPALDING LLP**

By: /s/ Henry J. Kaim
    Henry J. Kaim
    Texas Bar No. 11075400
    HKaim@kslaw.com
    Mark W. Wege
    Texas Bar No. 21074225
    MWege@kslaw.com
    Edward L. Ripley
    Texas Bar No. 16935950
    ERipley@kslaw.com
    King & Spalding, LLP
    1100 Louisiana, Suite 4000
    Houston, Texas 77002
    Telephone: (713) 751-3200
    Fax: (713) 751-3290

- and -

Shelley D. Rucker
Tennessee Bar No. 010098
Miller & Martin PLLC
832 Georgia Avenue, Suite 1000
Chattanooga, TN 37402-2289
Phone: (423) 785-8289
Fax: (423) 785-8480
Email: srucker@millermartin.com

**COUNSEL FOR
THE DEBTORS IN POSSESSION**